## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| MATTHEW LEE SEPULVEDA, | § | |
|     *Petitioner*, | § | |
| | § | Criminal Case No. 7:19-CR-02120 |
| v. | § | Civil Case No. 7:24-CV-244 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     *Respondent*. | § | |

## UNITED STATES' MEMORANDUM IN OPPOSITION TO SEPULVEDA'S 28 U.S.C. § 2255 MOTION

Petitioner Matthew Lee Sepulveda moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction in the above-styled cause, asserting in one ground for relief that he received ineffective assistance of counsel. Doc. 97.[1] Specifically, Sepulveda complains about his attorney's performance before and during trial, arguing that his attorney failed to review discovery with Sepulveda, failed to discuss or explain trial strategy, failed to ask questions of witnesses suggested by Sepulveda, and failed to investigate various avenues of impeachment against Government witnesses. Doc. 97 at 4. But because the record

---

[1] Citations to "Doc. __" refer to the numbered documents in the docket for case No. 7:19-CR-02120; page citations are to the page numbers identified in the ECF header for the document. Citations in the format "PSR ¶ __" refer to the May 10, 2021, presentence investigation report (Doc. 69), and the corresponding paragraph number therein.

conclusively shows that Sepulveda's vague and conclusory claims lack merit, his motion should be denied without an evidentiary hearing.

## I.    Background

### A.    Procedural History

Sepulveda was a police officer with the Progreso Police Department. Doc. 67 at 209. On October 29, 2019, he was indicted on 2 counts: deprivation of rights under color of law by willfully depriving V1[2] of liberty without due process of law (count 1), and deprivation of rights under color of law, by sexually assaulting MV2, thereby willfully depriving MV2 of liberty without due process of law (count 2). Doc. 10 at 1–2. *See* 18 U.S.C. § 242. Sepulveda pleaded not guilty to both counts and proceeded to trial. Docs. 67, 68 (transcripts of jury trial).

### B.    Sepulveda used his authority to sexually assault two victims.

On June 28, 2019, 20-year-old V1 was driving to a friend's house after completing a work shift. Doc. 67 at 21–25. He was pulled over by Sepulveda for traveling 35 miles per hour in a 30 mph zone. Doc. 67 at 26, 30. When Sepulveda discovered that V1 did not have a driver's license

---

[2] To protect their privacy, this response refers to the victims in this case as "V1" (victim 1) and "MV2" (minor victim 2).

Case 7:24-cv-00244    Document 4    Filed on 09/19/24 in TXSD    Page 3 of 28

or car insurance, he arrested V1 and transported him to the Progreso police department. Doc. 67 at 27–28. Once V1 was in the vehicle, Sepulveda added that V1 would also be charged with resisting arrest, which confused V1. Doc. 67 at 31.

At the station, Sepulveda asked V1 several questions, and when he discovered that V1 was in the U.S. illegally with no social security number, Sepulveda stated, "Do you know what happens to people that go to County without a social?" Doc. 67 at 35. Sepulveda explained that V1 would be deported. Doc. 67 at 35. V1 was scared and told Sepulveda he had been in the U.S. his whole life and did not want to mess up his life by going back to Mexico. Doc. 67 at 36–38.

Sepulveda took V1 to a jail cell and told him he forgot to check his body for drugs and needed to pat him down. Doc. 67 at 40. V1 pulled down his shorts for Sepulveda to see that he had no weapons or drugs. Doc. 67 at 41–42. Sepulveda told V1 that his truck was being impounded and asked V1 about his background and girlfriend; V1 urged Sepulveda to give him a second chance, as he did not want to be deported. Doc. 67 at 44–45. Sepulveda indicated he would think about it. Doc. 67 at 45. Sepulveda took V1 out of the cell and instructed him that if any other

officers saw them, he was to say he was having an anxiety attack and needed to be removed from the cell. Doc. 67 at 45. Sepulveda took V1 into an office at approximately 12:20 a.m., as evidenced by the police surveillance cameras in the hallway and jail cell. Doc. 67 at 47–48; GE 10.

Once in the office, Sepulveda continued to ask V1 about his girlfriend, his sexual experiences, and his involvement with masturbation and pornography. Doc. 67 at 48–52; GE 1 & 2. V1 felt it was weird, but wanted to cooperate. Doc. 67 at 51. There was a knock at the door and Sepulveda learned that V1's mother was at the police station. Doc. 67 at 53–54. When Sepulveda returned, he indicated he could not just let V1 off the hook for his crimes; V1 asked Sepulveda about community service options and Sepulveda replied, "No, it's not that simple. I need you to grab that chair, turn out the light and let me suck your dick." Doc. 67 at 54–55. V1 complied and allowed Sepulveda to give him oral sex; he didn't think he had an option as he was under arrest. Doc. 67 at 46. V1 contemplated trying to run out of the office and find his mom, but he was worried he would make things worse. Doc. 67 at 56–57. Sepulveda told V1 to tell his parents he would be getting a ticket in the

mail with a court date, but there was never a court date, nor were charges filed. Doc. 67 at 60–61.

The experience traumatized V1, and he told his girlfriend shortly afterward that he wanted to kill himself. Doc. 67 at 62, 66. V1 reported the incident within a few hours, and turned over his underwear to the Hidalgo County Sheriff's Office. Doc. 67 at 74–75, 78–79, 103–07; GE 14 & 15. Hidalgo County deputies secured a search warrant for samples of Sepulveda's DNA, and subsequent DNA analysis of the front panel of V1's underwear revealed a mixture profile, 434 million times more likely to be the DNA of 3 people: V1, Sepulveda, and an unknown individual. Doc. 67 at 110–13, 144–47, 168–78, 184–88, 198; GE 14.

A deputy obtained a search warrant for Sepulveda's cell phone and reviewed video surveillance of the Progreso police station. Doc. 67 at 116–20; GE 9. The deputy discovered that Sepulveda had accompanied two other young males from a jail cell to the office, like V1, and there was no record of them in the arrest logs. Doc. 67 at 120–22. Through his investigation, the deputy was able to identify them. One was the second victim in this case, MV2. Doc. 67 at 126–28.

In the early hours of June 30, 2019, approximately 30 hours after he sexually assaulted V1, Sepulveda instructed Officer Riviera to initiate a traffic stop of a vehicle for a broken taillight. Doc. 67 at 213–17. Sepulveda and Officer Rodriguez arrived at the scene soon after. Doc. 67 at 218. The occupants of the vehicle were all minors—four girls and three boys. Doc. 67 at 217–18, 222. Riviera learned that the male driver did not have a driver's license or car insurance, so he planned to call the parents of the juveniles to pick them up. Doc. 67 at 220–24. He reached the mother of one of the girls and she agreed to take all four of the girls home. Doc. 67 at 225; Doc. 68 at 16.

Riviera made contact with the parent of the male driver and was going to ask if that parent could take the other two boys home, who were brothers. Doc. 67 at 225–26; Doc. 68 at 13. Sepulveda interfered and instructed Riviera not to do this, as he was going to take the brothers to the police station. Doc. 67 at 225–26. This did not make sense to Riviera because they could not put juveniles in a jail cell, and the traffic infractions were committed by the driver, who they were letting go home. Doc. 67 at 226–27. Sepulveda took custody of the brothers, leaving the scene and instructing Rodriguez to stay with Riviera. Doc. 67 at 228, 230.

Riviera and Rodriguez stayed at the scene for the vehicle to be towed; Riviera texted Sepulveda to inform him they were on their way back to the station. Doc. 67 at 230–31. Sepulveda told them to stay on watch in that area, as there was a high-speed chase coming through in which the Weslaco Police Department may require their assistance. Doc. 67 at 232–34. They waited 30–40 minutes and saw nothing that Sepulveda described, so they returned to the police station. Doc. 67 at 233–34. Upon arriving at the station, Riviera inquired about the whereabouts of the two boys, and Sepulveda evaded his question. Doc. 67 at 237–38. When he did respond, Sepulveda initially said the city manager took the boys, then later changed his story and stated he needed to take the boys home. Doc. 67 at 238–39. There were no reports of a high-speed chase from Weslaco that morning. Doc. 67 at 232–33.

MV2 was one of the passengers of the car stopped by Riviera; Sepulveda inquired about his age at the scene and MV2 confirmed he was 17. Doc. 68 at 4–10, 46. Sepulveda drove MV2 and his brother to the Progreso police department. Doc. 68 at 14, 18–19. MV2 twice asked Sepulveda if they could ride home with the parent of their friend, and he said no. Doc. 68 at 19–20. MV2's brother was put in a cell, and Sepulveda

took MV2 to an office. Doc. 68 at 20–22; GE 2, 11. Sepulveda engaged him in conversation, inquiring if any of the vehicle occupants were dating and asking MV2 how big his penis was. Doc. 68 at 23–25.  Sepulveda then told MV2 to let him see his penis. Doc. 68 at 26. Sepulveda offered to play a pornographic video for him to become erect. Doc. 68 at 26–27. MV2 was uncomfortable, but felt he had to comply as Sepulveda was law enforcement. Doc. 68 at 26–30.

Sepulveda showed him a pornographic movie on his iPhone. Doc. 68 at 28. The web history of Sepulveda's cell phone indicates he visited two pornographic websites in the early morning hours of June 30, 2019. Doc. 68 at 74–76; GE 9-C. MV2 did not feel he could leave as he thought he was under arrest. Doc. 68 at 29. Sepulveda encouraged MV2 to masturbate, and while he did, MV2 overheard Sepulveda talking to officers on his radio about Weslaco needing assistance with a driver. Doc. 68 at 29–30. Sepulveda then performed oral sex on MV2. Doc. 68 at 31–33. MV2 described the experience as painful and stated that he never had an erection. Doc. 68 at 33–34.

Sepulveda inquired about whether MV2's brother would do this type of stuff. Doc. 68 at 33. Sepulveda instructed MV2 to go convince his

brother. Doc. 68 at 33. When MV2 reunited with his brother, he warned him about Sepulveda and told him to try to stall him. Doc. 68 at 36. Sepulveda eventually took the boys to their home; MV2 had him drop them off in the front of their neighborhood, not their house, and gave him a fake phone number when asked for it. Doc. 68 at 40, 45–46.

Sepulveda was indicted in federal court for his conduct and proceeded to a jury trial. Doc. 10. On March 10, 2021, the jury returned a guilty verdict as to both counts of the indictment. Docs. 55; 56.

### C.    Probation prepares a PSR and Sepulveda is sentenced.

A PSR was prepared using the 2018 Guidelines Manual. Doc. 69 at 12 (PSR ¶ 30). Regarding Count One, Sepulveda's base offense level was calculated at 32, pursuant to U.S.S.G. § 2H1.1(a)(1). Doc. 69 at 12 (PSR ¶¶ 31, 33). Six levels were added because the offense was committed under color of law, as Sepulveda committed this offense during the execution of his official duties as a Progreso police officer. Doc 69 at 12 (PSR ¶ 34). Two levels were added because V1 was a vulnerable victim, bringing the offense level to 40. Doc. 69 at 12–13 (PSR ¶¶ 35, 38).

Regarding Count Two, Sepulveda's base offense level was calculated at 40, pursuant to U.S.S.G. § 2H1.1(a)(1) and U.S.S.G.

§ 2A3.1(a)(2). Doc. 69 at 13–14 (PSR ¶¶ 39–44). The same eight levels that applied for Count One also applied to Count Two and were added, bringing the offense level to 48. Doc. 69 at 14 (PSR ¶¶ 45–46). The multiple count adjustment brought the offense level to 49, but when the total offense level is calculated in excess of 43, the offense level is treated as 43. Doc. 69 at 15 (PSR ¶¶ 50–54).

Sepulveda had no criminal convictions, so a criminal history score of zero established a criminal history category of I. Doc. 69 at 15 (PSR ¶¶ 55–57). Based upon a total offense level of 43 and criminal history category of I, Sepulveda's Guidelines Range for both counts was life. Doc. 69 at 17–18 (PSR ¶ 70). However, the maximum term of imprisonment for count one is 1 year, while the maximum term of imprisonment for count two is life. 18 U.S.C. § 242.

At sentencing, Sepulveda's counsel asked the district judge to consider Sepulveda's young age of 25, his lack of criminal history prior to these offenses, and whether a life sentence was appropriate in comparison to other civil rights cases where the victims died. Doc. 89 at 11–12. The judge responded:

> COURT: Mr. Sepulveda, again, I've read extensively about all your background. Obviously, I sat through the trial and we

learned a lot about you even through the testimony of other witnesses during the trial. I mean, it was a terrible incident, these are terrible events. I don't know how you feel about them at this point. I know you did not testify and forced the Government for its burden of proof but now that the trial's over, I don't know what you want to say but you get to speak. If there's anything you want to say, now is your chance to speak.

SEPULVEDA: No comment.

Doc. 89 at 12–13. The prosecutor requested a life sentence. Doc. 89 at 17.

The Court ultimately sentenced Sepulveda to 12 months' imprisonment for Count One, with one year of supervised release. Doc. 89 at 21. The Court sentenced Sepulveda to 360 months' imprisonment for Count Two, with five years of supervised release, to run concurrently with count one. Doc. 89 at 21. The court also ordered restitution to V1 in the amount of $10,000. Doc. 89 at 24–25.

### D. Sepulveda unsuccessfully appeals.

Sepulveda appealed his conviction and sentence, raising four issues to the Fifth Circuit Court of Appeals:

1. Whether Sepulveda's sentence was unreasonable because the district court noted Sepulveda's lack of remorse at sentencing;

2. Whether the district court erred in ordering Sepulveda to pay restitution in the amount of $10,000;

3.    Whether Sepulveda's right to confront witnesses was violated by the government's failure to disclose a victim's criminal arrest that resulted in a no bill; and

4.    Whether the district court erred by denying Sepulveda's motion for new trial.

*See United States v. Sepulveda*, 64 F.4th 700, 706 (5th Cir. 2023). The appellate court overruled all of Sepulveda's issues. *Id.* at 715.

In his final two issues (addressed first by the court of appeals), Sepulveda alleged that the Government failed to disclose—until after the jury returned a guilty verdict—that MV2 had a prior arrest for sexual assault. *See id.* at 706. Sepulveda asserted that evidence of MV2's arrest and "pending prosecution" could have been used to impeach MV2's "possible bias or motive . . . for testifying in a particular manner." *Id.* at 707.

The Fifth Circuit held that Sepulveda's impeachment theory foundered on speculation. *See id.* at 708. Lacking evidence that federal prosecutors could have influenced Texas prosecutors' conduct, or even evidence of contact between federal and state prosecutors, Sepulveda's impeachment theory was built only on "conjecture." *See id.* Sepulveda's "attenuated chain of inferences" that the impeachment evidence might have led to MV2 making exculpatory admissions regarding how the

Texas prosecution influenced his testimony in the federal case did not give rise to a "reasonable probability" that his case would have turned out differently. *See id.*

Moreover, the Fifth Circuit noted that even if Sepulveda had been able to use the evidence to catch MV2 in a lie about whether he had ever been arrested, that possibility did not undermine the confidence in the verdict in light of the Government's extensive evidence corroborating MV2's testimony. *See id.* at 709. This included testimony from other witnesses, surveillance video footage showing Sepulveda escort MV2 into a private office, Sepulveda's browser history of visiting pornographic websites at the time recounted by MV2, and the similarity between MV2's testimony and V1's DNA-corroborated testimony. *See id.*

Following his unsuccessful appeal, Sepulveda has now timely filed a motion pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence, raising in one ground for relief a multitude of ineffective assistance of counsel claims. Doc. 97. Specifically, in a single ground, Sepulveda alleges that his trial attorney:

1.    Failed to review discovery with Sepulveda prior to trial;

2.    Failed to discuss trial strategy with Sepulveda;

3.    "Minimized" the charges against Sepulveda, and assured Sepulveda that if he were found guilty, he would prevail on appeal;

4.    Ignored questions for witnesses propounded by Sepulveda, telling Sepulveda he did not want to "open up a can of worms";

5.    Failed to explain to Sepulveda strategies for "testifying or for not testifying," instead advising Sepulveda not to testify for fear of "opening up a can of worms";

6.    Assuring Sepulveda, mid-trial, that the Government had failed to prove its case and that even if he were found guilty, Sepulveda would prevail on appeal;

7.    Failed to investigate Sepulveda's allegation that law enforcement witnesses lacked proper certifications;

8.    Failed to "use in questioning" Sepulveda's claim that a "government witness" had made "sexual advances" towards Sepulveda;

9.    Failed to make use of information provided by Sepulveda that Sepulveda had allowed MV2 to charge his phone in order to call MV2's mother; and

10.    Failed to make use of information that Sepulveda knew of "witnesses" who could attest to V1 "bragging about getting his papers as a goal for prosecution" of Sepulveda.

Doc. 97 at 4. Because the record conclusively shows that Sepulveda's ineffective assistance claims lack merit, this Court should deny those claims without the need for a hearing.

## II.    Sepulveda has failed to prove that he received ineffective assistance of counsel.

A claim of ineffective assistance of counsel must meet *Strickland v. Washington*'s familiar two-part test. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). That test requires a movant to prove that his attorney performed deficiently, and that but-for that deficient performance, the result of the proceedings would have been different. *See id.* A failure to establish either prong defeats the claim. *See id.* at 697; *United States v. Lincks*, 82 F.4th 325, 330 (5th Cir. 2023).

To prove deficient performance, a movant must show that his counsel's performance was objectively unreasonable, falling outside the broad range of reasonable assistance. *See United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014). Courts strongly presume counsel's performance falls within the wide range of reasonable professional assistance. *Premo v. Moore*, 562 U.S. 115, 121 (2011). And the Fifth Circuit has "consistently found counsel's decisions regarding examination and presentation of witnesses and testimony" to be presumptively reasonable and effective. *See Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011); *see also Johnson v. Dretke*, 394 F.3d 332, 337–38 (5th Cir. 2004); *Moore*, 562 U.S. at 121.

Not only must a movant alleging ineffective assistance prove that his attorney performed deficiently, but he must also prove that that deficiency prejudiced the outcome of the proceedings. *See Strickland*, 466 U.S. at 687. A defendant must "affirmatively prove" prejudice. *See United Kayode*, 777 F.3d at 724 (quoting *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994)). A mere allegation of prejudice is not sufficient to satisfy *Strickland*'s second prong. *See id.*

Where a defendant's ineffective assistance claims relate to his attorney's performance at trial, a showing of prejudice requires proving that counsel's errors were so serious as to "deprive the [movant] of a fair trial, a trial whose result is reliable." *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 694)).

Because Sepulveda has failed to demonstrate either that his attorney performed deficiently, or that any alleged deficiencies resulted in prejudice, his ineffective-assistance-of-counsel claims should be denied.

## A.    Sepulveda has failed to show that his counsel was ineffective prior to trial.

Of Sepulveda's vague and conclusory claims, four appear to relate—

at least in part—to his attorney's performance prior to trial. Doc. 97 at 4.

Sepulveda alleges that:

> Trial defense counsel did not go over discovery with [Sepulveda]. Trial defense counsel did not discuss nor explain any strategy before trial. Before trial, trial defense counsel minimized the allegations against [Sepulveda] and repeatedly stated that if they lost at trial, they would win it on appeal. . . . Applicant told trial defense counsel that law enforcement officers who testified against him did not have their proper Texas Commission of Law Enforcement (TCOLE) certifications. Trial defense counsel never investigated said assertions.

Doc. 97 at 4. But Sepulveda's allegations fall short of the standard to

prove ineffective assistance.

First, Sepulveda's conclusory allegations are contradicted by the

record. In the months leading up to Sepulveda's trial, this Court

conducted multiple pre-trial hearings in which Sepulveda's attorney

requested continuances. Docs. 84–87 (transcripts of pre-trial hearings).

In each hearing, Sepulveda's attorney asked for additional time to review

the extensive discovery in the case and better prepare for trial. In each of

those hearings, during which the evidence against Sepulveda was

discussed, Sepulveda was present with his attorney. Docs. 84 at 7; 85 at 3; 86 at 3; 87 at 3. So Sepulveda's suggestion that he was unaware of the Government's discovery because of his attorney's inaction lacks credibility.

Further, Sepulveda does not explain how his attorney's alleged failure to "go over discovery" with Sepulveda or discuss trial strategy with him constituted ineffective assistance of counsel. A movant alleging ineffective failure to prepare for trial must state with specificity how additional preparation would have benefitted the movant's defense. *See United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000). Here, Sepulveda makes no attempt to explain how additional consultation about or explanation of the evidence against him would have changed the outcome of the case. Sepulveda does not allege—much less prove—that had he known more about the seriousness of the case he would not have proceeded to trial. Lacking such an explanation, Sepulveda cannot show that his attorney's alleged failure to consult or explain constituted deficient performance, much less prejudice. *See Schwander v. Blackburn*, 750 F.2d 494, 499–500 (5th Cir. 1985) (holding that "brevity of

consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel.").

And though Sepulveda alleges that his attorney did not explain his trial strategy, the record demonstrates that Sepulveda's attorney had a well-developed strategy of undermining the credibility of Sepulveda's victims and challenging the strength of the Government's DNA evidence. Sepulveda's attorney cross-examined both victims about the details of their allegations, and their possible motives for fabricating those allegations. Doc. 67 at 85–88, 93; Doc. 68 at 50–53. Sepulveda's attorney also cross-examined Government law enforcement witnesses about police procedures that might explain detaining V1 and MV2 but then releasing them without charges. Doc. 68 at 86. And Sepulveda's attorney called his own DNA expert to undermine the Government's DNA evidence. Doc. 68 at 99, 102–03.

Though Sepulveda now feels that he was not consulted enough about the strength of the Government's case prior to trial, his conclusory allegations about his attorney's failure to better explain the evidence or his trial strategy fail to demonstrate ineffective assistance of counsel. *See, e.g., United States v. Turner*, 2019 WL 1506656, at *4 (S.D. Tex. Apr.

4, 2019) (Miller, J.) ("Defendant's assertion that counsel did not review any pretrial discovery documents or evidence is speculative, unsupported in the record, and provides no basis for either habeas relief or an evidentiary hearing."); *United States v. Green*, 2017 WL 8889883, at *3 (S.D. Tex. Nov. 16, 2017) (Hittner, J.) (defendant's general allegations that his attorney failed to examine provided discovery or discuss trial strategy did not rise to the level of specificity required for habeas relief).

As for Sepulveda's claim that his attorney failed to investigate whether any law enforcement witnesses did not have proper certifications, that claim similarly fails as vague and conclusory. It is well established that in order to prevail on an ineffective assistance claim for failing to investigate, a habeas petitioner must "state with specificity what the investigation would have revealed and how the evidence would have altered the outcome of the trial." *United States v. Johnson*, 2018 WL 2222203, at *4 (S.D. Tex. May 14, 2018) (unpublished) (Miller, J.) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Sepulveda fails to meet this burden.

Sepulveda alleges that his attorney failed to investigate whether certain officers had proper certifications to serve in law enforcement, but

he does not name those officers or explain how undermining their testimony through impeachment would have affected the outcome of his trial. Sepulveda would likely struggle to make a showing that such impeachment would have helped his defense. The Government's evidence against Sepulveda rested largely on testimony from the victims, as well as ample corroborating evidence to support their accounts of what occurred. *See Sepulveda*, 64 F.4th at 709. The law enforcement witnesses primarily testified in order to introduce video and other corroborating evidence, and their expertise in law enforcement was not reasonably in question. So Sepulveda has failed to demonstrate ineffective assistance for his attorney's alleged failure to investigate whether certain unnamed law enforcement witnesses possessed proper certifications.

## B. Sepulveda has failed to show that his attorney was ineffective during trial.

Sepulveda's remaining claims, related to his attorney's performance during trial, fair no better than his pre-trial claims. In the remainder of his sole ground for relief, Sepulveda asserts that, during trial, his attorney:

1. Refused to ask questions of witnesses propounded by Sepulveda;

2.    Advised Sepulveda not to testify without explaining "possible
strategies for testifying or not testifying";

3.    Assured Sepulveda that he would be successful at trial or on
appeal;

4.    Failed to impeach an unnamed witness about sexual advances
the witness made against Sepulveda;

5.    Failed to utilize evidence that Sepulveda allowed MV2 to
charge his phone so he could call his mother; and

6.    Failed to call unnamed witnesses to testify about V1 bragging
about "getting his papers" as a goal for testifying.

Doc. 97 at 4. But these vague, non-specific, and conclusory allegations do
not entitle Sepulveda to relief.

On the face of Sepulveda's motion, it is impossible to assess whether
his attorney rendered prejudicially deficient performance by failing to
ask questions of witnesses propounded by Sepulveda. Sepulveda does not
describe the questions, the witnesses those questions should have been
directed towards, or the prejudice that resulted from failing to ask the
un-described questions. Lacking this specificity—and in light of the wide
latitude given to attorneys in choosing how to cross-examine witnesses—
Sepulveda's claim that his attorney failed to ask unspecified questions of
witnesses does not entitle him to relief. *Accord Sayre v. Anderson*, 238
F.3d 631, 635–36 (5th Cir. 2001) ("Complaints of uncalled witnesses are

not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.") (collecting cases).

Next, Sepulveda's claim that his attorney did not advise him of the strategies behind testifying or not testifying is also hopelessly vague. Sepulveda does not explain how testifying in his defense would have changed the outcome of his case. Nor does he specify what information his attorney could have provided that would have changed his decision not to testify. Sepulveda fails even to allege that he wished to testify, or that he told his attorney he wished to testify. Sepulveda therefore cannot demonstrate that he is entitled to habeas relief based on such a vague and conclusory allegation. *See Delgado v. United States*, 2010 WL 58251, at *4 (S.D. Tex. Feb. 10, 2010) (Alvarez, J.) (no hearing required on claim that attorney failed to advise on right to testify where defendant did not assert "facts he would have testified to," or "how facts would have affected the outcome of his trial"); *cf. United States v. Martinez*, 181 F.3d 627, 629 (5th Cir. 1999)) (remanding habeas petition to district court to allow petitioner to state claim with greater specificity where petitioner claimed that he told counsel that he wanted to testify).

Sepulveda's failure-to-impeach claim, like his other allegations, suffers from a fatal lack of specificity. He accuses his trial attorney of failing to impeach an unnamed Government witness with information that the witness had previously made "sexual advances" toward Sepulveda. But he does not name the witness who supposedly made "sexual advances" towards him, nor does he describe those advances. Without such specificity, this Court cannot evaluate whether Sepulveda's attorney deficiently declined to use this alleged information in cross-examination, much less whether that decision was prejudicial. *See United States v. Nowlin*, 2017 WL 3608256, at *6 (S.D. Tex. Aug. 21, 2017) (Lake, J.) (citing *Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009) (denying inadequate cross-examination claim for failure to propose any particular questions that counsel failed to ask, thus denying reviewing court ability to "examine whether counsel's purportedly deficient performance resulted in actual prejudice").

Finally, Sepulveda's motion makes two allegations that require a liberal construction to constitute grounds for relief.[3] He claims that he

---

[3] Though ordinarily only a *pro se* movant's grounds are entitled to a liberal construction, in the interest of justice, the Government's response provides such a construction to the final part of Sepulveda's sole ground for relief.

told his attorney that he allowed MV2 to charge his phone so that MV2 could call his mother, and that Sepulveda had "witnesses" who could attest to V1 "bragging about getting his papers" as a goal for prosecution of the case. Doc. 97 at 4. Though he does not state that his attorney was ineffective for failing to use this information to cross-examine MV2 or call those witnesses to testify against V1, even if those claims are implied, they do not entitle Sepulveda to relief.

As for the information that Sepulveda allowed MV2 to charge his phone so that MV2 could call his mother, Sepulveda does not explain how that information would have undermined MV2's credibility or otherwise changed the outcome of the case. Given counsel's broad discretion in determining how to cross-examine witnesses, Sepulveda cannot show that his attorney was prejudicially deficient for failing to use such a trivial detail to cross-examine MV2. This is especially true given counsel's cross-examination of MV2 about more salient topics, such as MV2's possible marijuana use or possession prior to being transported to the Progresso police station, the delay between when MV2 interacted with Sepulveda and when he reported Sepulveda to law enforcement, and

whether any doors in the police station where MV2 was held were locked. Doc. 68 at 51–53.

Finally, Sepulveda appears to imply that his attorney should have called some unnamed witness to testify that V1 bragged about testifying against Sepulveda to get "his papers." Doc. 97 at 4. But Sepulveda does not name the witness, state that they were available to testify, or detail what their testimony would have been. This alone is fatal to his final allegation. *See Johnson*, 2018 WL 2222203 at *4. Moreover, Sepulveda's attorney cross-examined V1 directly about whether his motive to testify involved achieving legal status in the United States. Doc. 67 at 85–87. Sepulveda does not explain how any additional evidence would have changed the jury's apparent decision not to credit the theory that V1 was fabricating allegations against Sepulveda for a favorable immigration outcome.

The record demonstrates that Sepulveda received a vigorous defense from his attorney. This included cross-examination of the Government's witnesses to both undermine the credibility of the victims and develop a theory to explain the presence of Sepulveda's DNA on V1's underwear. Further, Sepulveda's attorney called his own DNA expert to

attack the Government's DNA evidence. In light of this defense, Sepulveda's vague, conclusory allegations lack any measure of specificity required to entitle him either to an evidentiary hearing or habeas relief.

## III.  Conclusion

The Government respectfully asks this Court to deny Sepulveda's § 2255 motion without further proceedings. The record conclusively demonstrates no relief is appropriate, so no evidentiary hearing is necessary. *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983). Moreover, because reasonable jurists could not disagree with the denial of the § 2255 motion, this Court should not issue a certificate of appealability. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

/s/ *Philip S. Harris*
PHILIP S. HARRIS
Assistant United States Attorney
Texas Bar No. 24086583

Attorneys for Respondent
1000 Louisiana Street, Ste. 2300
Houston, TX 77002
Phone: (713) 567-9000

**CERTIFICATE OF SERVICE**

I, Philip S. Harris, Assistant United States Attorney certify that a true and correct copy of *United States' Memorandum in Opposition to Sepulveda's 28 U.S.C. § 2255* was electronically filed with the United States District Clerk for the Southern District of Texas on September 19, 2024. On that date, a true and correct copy of the document was electronically served to Mr. Carlos A. Garcia, counsel for the movant.

/s/ *Philip S. Harris*
PHILIP S. HARRIS
Assistant United States Attorney